1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13

EAGLE VIEW TECHNOLOGIES, INC.,

Plaintiff,

v.

XACTWARE SOLUTIONS, INC.,

Defendant.

CASE NO. C12-1913RSM

ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT

14

## I.     INTRODUCTION

15
16
17
18
19
20
21
22

THIS MATTER comes before the Court on Plaintiff's Motion for Partial Summary
Judgment. Dkt. #123. Plaintiff asks the Court to grant it summary judgment on its first claim for
declaratory relief by holding that the parties' Agreement automatically renewed for another 48-
month term (until November 4, 2016), and that a termination of the Agreement prior to
November 4, 2016 by Defendant, without cause, constitutes a material breach of the Agreement.
Dkt. #123 at 1. Plaintiff further requests that the Court grant partial summary judgment in its
favor on Defendant's breach of contract counterclaim, specifically finding:

23
24
25

1)  Xactware's claim that Eagle View breached the Agreement by providing integration
    services with AccuLynx, MaxCon, and Home Depot can be resolved in Eagle View's

ORDER – 1

favor on summary judgment because the very terms of the Agreement do not prohibit Eagle View from integrating with those entities;

2) Xactware's claim that Eagle View's development of its Estimator product breached the Agreement can also be resolved as a matter of law. Neither Paragraph 3 nor any other paragraph of the Agreement prohibits Eagle View from developing its Estimator, which does not compete with Xactware's roof-repair-estimate product;

3) Xactware's claim that it is entitled to terminate the Agreement because Eagle View previously permitted Symbility Solutions, Inc. ("Symbility") to use Eagle View's preexisting standard web services interface can be resolved as a matter of law because (i) it is undisputed that Eagle View has already cured any such alleged breach by completely shutting down the interface, and (ii) the basis for Xactware's claim – that enabling Eagle View's standard web services interface for Symbility breached Paragraph 3 of the Agreement – is legally untenable;

4) Xactware's claim that it can terminate the Agreement because Eagle View failed to pay the proper amounts to Xactware for the period 2008 to November 2012 can be resolved as a matter of law, either in whole or in part, because (i) Xactware's notice of breach is vague, nonspecific, and legally deficient under governing New York law; and (ii) it is undisputed that from 2008 to January 2011, Xactware calculated and invoiced Eagle View and has already conceded that Eagle View paid all of its invoices from this period;

5) Xactware's two-part warrants claim can be resolved as a matter of law because (i) it is undisputed that Xactware earned one million warrants before the Agreement's initial

ORDER – 2

term concluded, and (ii) Xactware is not entitled to earn any additional warrants in this renewed term (*i.e.*, year 5 of the Agreement and beyond) because the Agreement's warrant schedule did not reset, as Xactware claims, upon renewal;

6) Xactware's claim that Eagle View breached Paragraph 12 by not providing notice of its impending merger with Pictometry can be resolved on summary judgment because the merger-of-equals transaction did not trigger Paragraph 12's notice requirement; and

7) Xactware's claim that Eagle View breached Paragraph 15's anti-assignment clause fails as a matter of law because the merger transaction – which is structured as a double-reverse triangular merger under Delaware law – did not result in an assignment of the contract by Eagle View, which survived the merger and retained all of its assets.

Defendant opposes the motion arguing that Plaintiff's own failure to perform precludes summary judgment on Plaintiff's first claim for relief, and that relief is also barred by fact issues related to its unclean hands and fraud in the inducement defenses.  Dkt. #147 at 3.  Defendant further argues that there remain genuine issues of material fact with respect to whether the Agreement renewed which preclude summary judgment.  Dkt. #147 at 10-13.  With respect to its Counterclaim, Defendant argues that there remain genuine issues of material fact with respect to agreements with third-party vendors, the Estimator software, breach by underpayment, breach regarding the Pictometry offer and breach regarding warrants, all of which preclude summary judgment.  Dkt. #147 at 13-25.

ORDER – 3

1    For the reasons set forth herein, and having determined that no oral argument is necessary

2    on this motion, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's motion.

3    ## II.    BACKGROUND[1]

4    Plaintiff, Eagle View Technologies, Inc. ("Eagle View"), provides aerial roof

5    measurement services to insurance and contracting industries by applying its proprietary

6    technology and techniques to aerial images, arriving at an accurate estimate of the area.  Dkt.

7    #126 at ¶ 2.  Defendant, Xactware Solutions, Inc. ("Xactware"), was founded in 1986.  *See* Dkt.

8    #127, Ex. OO at 15:24–25 *(filed under seal)*.  Xactimate is Xactware's flagship claims-estimation

9    software. *See id.* at 32:17–20 *(filed under seal)*.  XactAnalysis is Xactware's business-to-business

10   network that facilitates the electronic transfer of claims to and from customers that use

11   Xactware's products.  *See id.* at 32:12–16 and 72:1–76:10 (*filed under seal*; describing flow of

12   hypothetical claim through Xactware's network, from the initial notification of a claim to an

13   adjuster showing up to property site to estimate amount of damage).  Xactware has approximately

14   80 percent of insurance-repair contractors and 19 of the top 25 property insurers using its software

15   to calculate the cost of repairs.  *See id.* at 103:14–104:14 *(filed under seal)*.

16   Eagle View and Xactware entered into the Agreement at issue in this case on November 4,

17   2008.  Dkt. #127, Ex. A *(filed under seal)*.  Under the Agreement, the parties created a

18   customized integration that permits the ordering and transmittal of Eagle View's roof

19   measurement reports through Xactware's network and software.  *See* Dkt. #127, Ex. OO at 72:5–

---

[1]  This background is drawn primarily from Plaintiff's motion as Defendant did not set forth a separate "Fact" or "Background" section in its opposition thereto.  To the extent that Defendant disputes the facts, those disputes are discussed below.

ORDER – 4

24 *(filed under seal).*   The Agreement, which was amended on January 21, 2011 (the "Amendment"), contains the following provisions relevant to this dispute:

Automatic renewal: Paragraph 9 provides "[t]he term of this Agreement shall be for forty-eight (48) months from the final signature date of the two parties.  Unless written notification is received sixty (60) days prior to the expiration of the current term, this Agreement shall automatically renew for like terms."  Dkt. #127, Ex. A at ¶ 9 *(filed under seal).*

Written Notice:  Paragraph 19 requires that "[a]ll notices given under the Agreement shall be in writing" and sent via "registered or certified mail, hand delivered with proof of delivery, or sent by express mail courier."  Dkt. #127, Ex. A at ¶ 19 *(filed under seal).*  The Agreement did not provide for notice by email.  Dkt. #127, Ex. WW at 93:25–97:8 *(filed under seal).*

Payments: Before the Agreement was amended in 2011, Paragraph 2 provided that Eagle View would pay Xactware a set fee for each residential assignment that resulted in a billable transaction for Eagle View or resulted in a report being created and returned to the customer. Dkt. #127, Ex. A at ¶ 2 *(filed under seal).*  Paragraph 2 was amended in 2011, after which Eagle View agreed to pay Xactware a certain percentage of "Qualified Revenue" that Eagle View generated. *See* Dkt. #127, Ex. B at ¶ 1 *(filed under seal).*

Warrants:  Paragraph 2(a) of the Agreement, which was not subsequently amended, requires Eagle View to issue to Xactware warrants to purchase shares of Eagle View common stock in accordance with the Agreement's Exhibit E.  *See* Dkt. #127, Ex. A at ¶ 2 and Exhibit E thereto *(filed under seal).*  Exhibit E provides a schedule for the number of warrants Xactware could earn during years one through four of the parties' relationship (*i.e.*, 2008 through 2012), and at execution of the contract, which is capped at one million.  *Id.*  The number of warrants

ORDER – 5

Xactware could earn during each year was based on the number of reports Eagle View processed and returned to customers through Xactware's network.  Dkt. #127, Ex. A at ¶ 2 and Exhibit E thereto *(filed under seal)*.  Unearned warrants could be rolled over to subsequent years to become earned at the original strike price.  *Id.*

Exclusivity: The 2008 Agreement's exclusivity provision in Paragraph 3 states:

> Xactware and EVT shall define requirements for the integration of EVT's applicable technology to be implemented within applicable Xactware application(s). During the term of this Agreement, the parties agree that EVT's services set forth herein are exclusive to Xactware, and EVT agrees not to enter into any agreements, written or otherwise, with Xactware's competitors, as listed in Exhibit C, that would enable or authorize such competitors to have access to integrated or linked EVT services (as set forth herein), software features or EVT Data in their software programs.

Dkt. #127, Ex. A at ¶ 3 and Exhibit C thereto *(filed under seal)*. There were 18 competitors identified in the Agreement.  *Id.*

Purchase Offer: Paragraph 12 obligates Eagle View to inform Xactware before it accepts either (1) a bona fide offer for the purchase of a majority or all of Eagle View's assets or (2) an investment offer that results in a change in control for Eagle View.  Dkt. #127, Ex. A at ¶ 12 *(filed under seal)*. It also contains a right of first refusal that applies only if Eagle View enters into any such agreement with the Xactware competitors listed in the Agreement's Exhibit C. *Id.*

Assignment: Paragraph 15 states that neither party can assign or transfer its interest in the Agreement without prior written consent of the other. Dkt. #127, Ex. A at ¶ 15 *(filed under seal)*.

On or about January 7, 2013, Eagle View and another entity, Pictometry, entered into a double-reverse triangular merger of equals, a transaction that Eagle View survived intact. *See* Dkts. #126, Ex. A and #127, Ex. MM at 185:21–24, 86:5–8, and 188:3–11; and Ex. NN at 48:19 and 72:11–73:6.  As a result of the merger transaction, Eagle View and Pictometry each became

ORDER – 6

wholly owned subsidiaries of a new entity, Aerial Holding, Inc. ("Aerial Holding").  Dkts. #126, Ex. E at Recitals A, B, C and ¶ ¶ 2.1–2.2 *(filed under seal)*; and #127, Ex. MM. 188:3–11 *(filed under seal)*.  Aerial Holding is a newly-formed holding company, formed solely to hold the two operating subsidiaries, Eagle View and Pictometry.  *See* Dkt. #127, Ex. MM at 187:9–11 *(filed under seal)*.  Eagle View's assets are still held entirely by Eagle View; there was no sale of assets at all.  Dkt. #126 at ¶ 4.  According to Eagle View, it did not assign its interests in the Agreement with Xactware, or transfer any rights with respect to the Agreement.  *Id.*  Nor did Aerial Holding make any investments in Eagle View.  *Id*. at ¶ 5.  Eagle View's Board of Directors and executive management is comprised of two individuals – Chris Barrow and John Polchin, both of Eagle View.  Dkt. #126 at ¶ 6 and Ex. A at ¶ 2.6(e). Immediately after the merger closed, Aerial Holding's board of directors was comprised of three Eagle View directors and three Pictometry directors. *Id.* ¶ 7 and Ex. A at ¶ 2.6(a). Aerial Holding's six new executive officers included three members of Eagle View's executive management and three members of Pictometry's executive management, with Mr. Barrow serving as Aerial Holding's CEO and Mr. Polchin as its CFO. *Id.* at ¶ 7 and Ex. A at ¶ 2.6(b).

### III.    PROCEDURAL HISTORY

On October 29, 2012, Eagle View filed an action for breach of contract, for declaratory relief, and for temporary and permanent injunctive relief.  Dkt. #1.  Eagle View then moved for a temporary restraining order and preliminary injunction, asking the Court to prevent Xactware from terminating the parties' Agreement.  *See* Dkts. #2 and #20.  On December 19, 2012, the Court issued an Order granting in part Eagle View's motion for preliminary injunction, issuing a preliminary injunction, but limiting the injunction's duration to 60 days.  Dkt. #30.

ORDER – 7

Eagle View appealed the Injunction to the Ninth Circuit Court of Appeals. Dkt. #33. The Ninth Circuit granted Eagle View's appeal, reversing the Court's limitation of the preliminary injunction to 60 days. Dkt. #115.

After remand, the Court denied Defendant's motion for partial summary judgment, which asked to Court to dismiss Plaintiff's third cause of action for injunctive relief. Dkt. #214. The Court also denied Plaintiff's motion to amend the Complaint to add Roof InSight allegations. Dkt. #216. The parties then sought a stay of this action while they worked for approximately 18 months to resolve it. *See* Dkts. #217-#228. Ultimately, they were unable to do so. Accordingly, this matter has been set for trial on December 7, 2015, and the Court now resolves the instant motion.

## IV.    DISCUSSION

### A. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986).    In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).    Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However,

ORDER – 8

the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

**B.  Plaintiff's First Claim for Relief**

Plaintiff first moves for summary judgment on its First Cause of Action.  Plaintiff initially sought an Order declaring that the Agreement is a valid and enforceable contract, that automatically renewed for a term of 48 months (from 2012-2016), and that a termination of the Agreement prior to November 4, 2016, by Xactware constitutes a material breach of the contract. Dkt. #123 at 12-16.  However, after Defendant argued that Plaintiff's motion is precluded by its own failure to perform, and by the doctrines of unclean hands and fraud in the inducement, Dkt. #147 at 3-10, Plaintiff narrowed the scope of its summary judgment motion to seeking an Order only stating that neither party provided timely notice of non-renewal under the Agreement.  Dkt. #177 at 5.  The Court will do so.  As the District Court previously stated, and the Ninth Circuit also affirmed, "[i]t is undisputed that neither party gave written notice of non-renewal in accordance with Paragraph 19."  Dkt. #30 at 4; *see also* Dkt. #115.  Accordingly, the Court grants Plaintiff's motion in this limited respect, without addressing whether Plaintiff is precluded from enforcing the contract for the reasons discussed by Defendant.

**C.  Defendant's Counterclaim**

The Court next addresses Plaintiff's request for summary judgment with respect to portions of Defendant's breach of contract Counterclaim.

ORDER – 9

*1. Symbility Agreement*

As an initial matter, Plaintiff has withdrawn its request for summary judgment with respect to the Symbility agreement. Dkt. #177 at 4, fn. 4. Accordingly, the Court will not address that portion of Plaintiff's motion.

*2. Third Party Vendors Not Listed In Exhibit C to Agreement*

Plaintiff next asks the Court to find that the Agreement's exclusivity provision, found in Paragraph 3, does not apply to vendors not listed in Exhibit C thereto. Defendant argues that the exclusivity provision precludes Plaintiff from providing service to Acculynx, MaxCon and Home Depot because the provision covers two areas: first, Defendant notes that the Agreement provides "EVT's services set forth herein are exclusive to Xactware"; and, second, "EVT agrees not to enter into any agreements, written or otherwise, with Xactware's competitors, as listed in Exhibit C." Dkt. #127, Ex. A at ¶ 3 and Exhibit C thereto *(filed under seal)*. Thus, Defendant relies on the first part of Paragraph 3 in arguing that Plaintiff may not provide "EVT data" to anyone for the purpose of creating an estimate for the cost to repair or replace a roof. Dkt. #147 at 17-18. As defined in Exhibit B to the Agreement, "EVT data" is a roof report. Dkt. #127 at Ex. A and Exhibit B thereto *(filed under seal)*.

The Court agrees with Defendant that the plain language of Paragraph 3 covers more than one area of exclusivity. Further, Acculynx, MaxCon and Home Depot software appear to be integrated with Plaintiff to provide Eagle View Reports. *See* Dkt. #24, Exs. B-D. The Court does not agree with Plaintiff that this reading of Paragraph 3 renders it superfluous. *See* Dkt. #177 at 8. A trier of fact must determine whether a breach of the plain language of the

ORDER – 10

exclusivity provision has occurred, given the scope of Paragraph 3. Accordingly, the Court denies this portion of Plaintiff's motion for partial summary judgment.

### 3. Estimator

Plaintiff next seeks summary judgment with respect to its Estimator software, which, it argues, does not currently compete with Defendant's software. The Court agrees with Plaintiff that the Agreement does not preclude Plaintiff from developing its software. Nor is there evidence in the record showing that Plaintiff has marketed Estimator in direct competition to Defendant, that any entity is currently using the software, or that it has displaced Defendant's software. Accordingly, the Court grants Plaintiff's motion for summary judgment with respect to this portion of Defendant's Counterclaim.

### 4. Alleged Underpayment

Plaintiff next seeks summary judgment with respect to two aspects of Defendant's counterclaim regarding underpayment – first, that the December 20, 2012, notice of breach is legally insufficient and therefore provides no basis for terminating the agreement, and second, that any claims regarding underpayments prior to January 2011 should be dismissed because those payments have been made. Defendant states that while it disputes pre-January 2011 payments, it will no longer bring those disputes to the jury. Dkt. #147 at 21-22. Defendant does not respond to the argument regarding the December 20, 2012, notice. *See* Dkt. #147 at 18-22. Instead, Defendant argues issues of fact with respect to whether Plaintiff actually underpaid, an issue that was not raised by Plaintiff. Accordingly, with respect to these portions of Defendant's counterclaims, the Court grants Plaintiff's summary judgment motion.

ORDER – 11

5.  *Warrants*

Plaintiff next seeks summary judgment on Defendant's claim that Plaintiff breached the Agreement by refusing to acknowledge that the warrants in Schedule E resets to Year 1 upon renewal of the Agreement and then failing to deliver the warrants on the Agreement's renewal date.  Plaintiff argues that Defendant erroneously interprets the Agreement's renewal provision and that not all provisions in the Agreement automatically renew.  For example, Plaintiff notes that none of the execution provisions renew because they are already accomplished by the time of renewal.  Dkt. #123 at 18-20.  The Court denies Plaintiff's motion on this issue.

Defendant has presented evidence that when the Agreement renewed, it renewed on "like terms," including the terms pertaining to warrants.  Dkt. #148, Ex. D at 137:22-140:25 *(filed under seal)*.  This evidence is consistent with the plain language of the Agreement.  Accordingly, Plaintiff's motion on this issue is denied.  Further, the Court will not address the numerous other arguments with respect to the warrants counterclaim raised for the first time in Plaintiff's reply brief, as Defendant did not have the opportunity to address those.

6.  *Pictometry Merger and Paragraphs 12 and 15*

Finally, Plaintiff seeks summary judgment on Defendant's counterclaim with respect to Plaintiff's merger with Pictometry.  Plaintiff argues that it did not violate either Paragraph 12 or Paragraph 15 as Defendant alleges.  The Court addresses each of these arguments in turn.

a.  Paragraph 12

The Court agrees with Plaintiff that Paragraph 12 of the Agreement requires notice of an intent to purchase only when Plaintiff intends to accept the offer.  Dkt. #127, Ex. A at ¶ 12 *(filed under seal)*.  Thus, the Court agrees that when Pictometry made two offers that were not

ORDER – 12

accepted by Plaintiff, Plaintiff was not required to give notice to Defendant of those offers. Accordingly, Plaintiff's summary judgment on this issue is granted.

Likewise, Defendant fails to raise any genuine issue of fact with respect to the ultimate merger between Plaintiff and Pictometry.   Plaintiff has produced evidence that the offer ultimately accepted from Pictometry was not an offer to purchase a majority or all of Plaintiff's assets.   *See* Dkts. #123 at 21-22 and #177 at 9-11.   Defendant does not provide contradictory evidence.   Accordingly, Plaintiff's motion is granted with respect to this issue.

b.   Paragraph 15

Plaintiff seeks to dismiss Defendant's counterclaim to the extent it alleges that Plaintiff's merger with Pictometry violated Paragraph 15 of the Agreement because it assigned the rights of a continuing contract.   Again, the Court finds that Plaintiff's motion with respect to this issue is granted.   A merger does not constitute an assignment under New York law.   *See Brentsun Realty Corp. v. D'Urso Supermarkets, Inc.*, 182 A.D.2d 604, 605 (N.Y. App. Div. 1992).   Defendant does not provide persuasive authority to the contrary.   Further, Defendant's argument with respect to the conversion of warrants from one company's stock to another is not persuasive on this issue.   Accordingly, Plaintiff's motion is granted with respect to this portion of its motion.

## V.   CONCLUSION

Having considered Plaintiff's motion, the opposition thereto and reply in support thereof, along with the Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1.   Plaintiff's Motion for Partial Summary Judgment (Dkt. #123) is GRANTED IN PART AND DENIED IN PART as discussed above.

ORDER – 13

2.   The remaining issues in this matter shall proceed as scheduled.

DATED this 17 day of June, 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER – 14